### THE WILLFARO.

(District Court, W. D. Washington, S. D.   February 23, 1923.)

No. 3895.

1. **Seamen ⊕12—Statement of mate construed as discharge does not authorize desertion of ship.**

Even if the statement by the mate to seamen who refused to work while the vessel was in port could be construed as a discharge, the mate had no authority to discharge them, and such statement did not warrant their deserting the ship.

2. **Seamen ⊕24—Master need not pay while seamen refuse to work.**

The master of a vessel need not pay its seamen at an intermediate port the half of their wages required to be paid by Rev. St. § 4530, as amended by Act June 5, 1920, § 31, where, at the time of demanding their half pay, the seamen were without justification refusing to perform the work required of them, and the seamen were therefore guilty of desertion in leaving the ship for such refusal to pay.

3. **Seamen ⊕24—Demand for half pay cannot be made after clearing of ship.**

The master of a ship is not obliged to give its seamen the half pay to which they are entitled at an intermediate port under Rev. St. § 4530, as amended by Act June 5, 1920, § 31, where the demand was not made until an hour or two before the ship left the port and after she had cleared.

In Admiralty.   Libel by Thomas Gutteridge, for himself and on behalf of other members of the crew of the steamship Willfaro, against the steamship Willfaro, to recover wages.   Libel dismissed.

Winter S. Martin and Ray M. Wardall, both of Seattle, Wash., for libelants.

Theo. B. Bruener, of Aberdeen, Wash., for respondent.

CUSHMAN, District Judge.   Libelants sue for wages.   The defense is that libelants refused to work and deserted the ship.   Libelants testified that, upon a voyage from the east coast of the United States to the west coast and return, for which they signed articles, they had worked overtime in certain ports before reaching Seattle.   Their testimony is not clear as to the number of hours of overtime.   There is no showing of overtime in excess of a total of eight hours, for which they had not already taken time off before reaching Seattle.

The vessel reached Seattle on the 8th of November, 1922.   Their testimony and that of the master shows it was customary on this ship, when members of the crew had worked overtime, to allow an equal amount of time off, but no extra pay.

On the morning of the 9th, in port, libelants were called for work, but did not respond.   The mate then went into the forecastle and asked them to turn to for work.   They declined.   The mate told them they would be logged for such refusal two days for one.   They did not work that day, going ashore.   No action was taken by the master in this matter.   They were called next morning and refused to work. What they were told by the mate upon their refusal is not entirely clear.   They claim that the mate said:

"Why are you hanging around here?   Why don't you go to the captain and get your money?"

This, the mate denies.

[1] Even if it be conceded that this is true, yet the mate would have no authority to discharge them, although such statement might be sufficient to explain a failure to work thereafter until the difference was adjusted; but it would not warrant their deserting the ship. They had refused to work before any such remark was made, if at all. In leaving port there are services which seamen, rather than port employees, are required to perform.

Section 4530, R. S. (section 8322, Comp. Stats.), as amended by the Act of June 5, 1920 (section 31, 41 Stats. at L. p. 1006), in part, provides:

"Every seaman on a vessel of the United States shall be entitled to receive on demand from the master of the vessel to which he belongs one-half part of the balance of his wages earned and remaining unpaid at the time when such demand is made at every port where such vessel, after the voyage has been commenced, shall load or deliver cargo before the voyage is ended, and all stipulations in the contract to the contrary shall be void: Provided, such a demand shall not be made before the expiration of, nor oftener than once in, five days nor more than once in the same harbor on the same entry. Any failure on the part of the master to comply with this demand shall release the seaman from his contract and he shall be entitled to full payment of wages earned."

An hour or two before the ship left the Port of Seattle for Tacoma, after she had cleared, they went to the master and demanded their pay. He refused to pay them. There is testimony that one or more of libelants demanded half of the pay due them, but the evidence as a whole convinces me that there was no demand for half pay.

One of the libelants testified:

"Q. Is this your first trip to the west coast?
"A. Yes, sir.
"Q. (By Mr. Wardall). You are contemplating a return to the east coast?
"A. No, sir; I am not."

Upon the captain's refusal to pay them, they took their belongings and went ashore. They were thereupon logged as deserters.

Each of them had been paid $10 on the 4th of November. The amount due one was $16.17, and each of the others, $15.17. They sue for $14.63 each.

[2, 3] While their conduct on the 9th did not amount to a desertion and was not so treated by the ship, their action on the 10th was a desertion of the ship. This is true, even if it be conceded that they demanded half pay and were refused. They had on the 9th, without the master's consent, taken all of the time off to which they were entitled, and had refused to work on the 10th before demanding their pay. The master was under no obligation to give them half pay while they refused to do their work when reasonably so required; nor was the master obliged to give them half pay after clearing his ship and so short a time before the ship left port.

The libel will be dismissed.